Please call the next case. Good morning, your honor. Good morning, counsel. If you could state your name, please. John Mounts. I represent the defendant, appellant Shante Jones. May it please the court. Defendant appellant Shante Jones in this case seeks reversal in a forceful entry detainer case of a trial court order below awarding possession of Ms. Jones' rent-subsidized apartment to her landlord, Hispanic Housing. This case is centered around an October 4, 2011, agreed order between the parties entered in by Hispanic Housing counsel Marvin Hoosby and defendant Jones with that point pro se and underrepresented by counsel in the cloakroom of the courtroom. Counsel, may I throw you off a little bit? Of course. In reviewing this case, I do have a couple of procedural questions. One, is this case moot? Your honor, we actually filed a, let me back up a second. When this sort of final procedure of the case. You asked for a stay. We did ask for a stay. At that point when we asked for a stay, Ms. Jones had been evicted, but was not given notice beforehand because she was not served with the notice that the case was being reinstated. Yeah, that's part of your argument. So we did seek a stay. And beyond that, I do not know if the apartment has been re-let. In any case, Hispanic Housing would be able to put Ms. Jones in possession of an equivalent apartment. I think that in terms of equity, this could be, even if it is mooted, it could be worked around. But I don't think it is actually mooted. Okay. My second procedural question is, there was another named defendant, Mr. Morton, who wasn't, I believe never served. So is there a final judgment in this case that would give us jurisdiction? The good question, I do not know. I do not remember that, Ms. Jones. Okay. Maybe I'll ask the Appellate's Counsel for it. Okay. Okay. Thank you. So as I was saying, this is centered around an October 4, 2011, agreed order. Specifically, Paragraph 4 of that order is the one that purports to give Hispanic Housing the right to possession. And it's worth, I believe, reflecting on exactly how broad Paragraph 4 truly is. Before you proceed, can you please explain to us, since we don't have a bystander's report, we don't have a transcript of the proceedings or a statement of facts, how are we to determine whether or not that actually is a scrivener's error? Well, Your Honor, I believe that a scrivener's error can be proven by a scrivener's affidavit. There was no scrivener's affidavit offered. Given that, we do not believe it was a scrivener's error. We believe that that was put there intentionally. Given the extremely broad scope of the paragraph, that it was designed to be specially agreed to by an initial, and the lack of initials there rendered that not agreed to. And were there any initials? There were not. But no other paragraph has a space for initials. That's absolutely correct, Your Honor. And it's not in the usual place, if you will, for initials. It's sort of at the end of the sentence, and then there's a period. So what is the evidence that that was put there for initials? I think that if you look at the totality of the document, you have only that paragraph as initial. And I think that that actually goes to the sort of uniqueness of that paragraph, because as we argue, and as I'm going to argue, I believe that even if that paragraph were agreed to, it's void as it purports to give the court a jurisdiction over an unlimited number of distinct controversies, which may not arise, may arise. It was completely unknown at this point. Wasn't there a time frame in there? Wasn't there like a 12-month probationary period? There was a 12-month probationary period written in on the form contract. So the form contract, number one, was there initially. The 1.1 probationary period was written in on the top, but that 12-month probationary period is not defined. It doesn't say that it has any particular relevance to the enforceability of the contract. And even if you were to limit it to 12 months theoretically, it could still encompass causes of action that have not even arisen yet. But the facts before us don't deal with a lease that happened subsequently, or five years later, or ten years later. It dealt with the same basic issue that the suit began with, whether or not your client had the right to possession under her lease at the time. And so does the fact that there might have been some hypothetical situation in the future really impact that paragraph in our decision? Well, I think it does for two reasons. Number one, the sweep of that paragraph sort of lends credence to the notion that it had to be individually agreed to. And if that is not agreed to, if paragraph four is out, then it doesn't have the provision whereby the plaintiff would be awarded immediate possession of the premises. Furthermore, we believe that given the broad sweep of that paragraph, it fails ad initio. It is just, it purports to give the court jurisdiction for unlimited cases and controversies, and therefore just should be immediately stricken and disregarded. This all started as an agreement between the parties, correct? Yes. And the agreement was because your client did not want to be evicted from the premises. That's correct. But in the briefs it indicates that she didn't have the means in order to satisfy what was being requested by Hispanic Housing. Yes, Your Honor. So was this really ever really an agreement that your client entered into because she knew she wasn't going to be able to fulfill the terms of the agreement? We would certainly argue that's a big problem with this as well, Your Honor, is that in terms of the actual context of how this happened, Ms. Jones is a subsidized housing tenant. She's not a sophisticated person. She's certainly not as sophisticated as a lawyer. And she was essentially dragged into the cloakroom. I understand she paid $776 previously. She sure did. But then she was subsequently supposed to pay $37. Was that right? I believe it's an additional $400. I'm sorry? I do have the... At the end I think it was, what, $500? So it was a total of $1,186.96 with $769.69 as the first payment and then $417 as the second. It was her agreement. It was the agreement, yes. But she paid the first $700 and some dollars. That's correct. So where does the $37 come in? The $37? I'm not sure where the court is getting that number. I think that was on a ledger presented by the landlord. Was that the amount of money that she didn't pay on one month in addition to what the subsidy was? Is that why it's so low, $37? I couldn't figure that out. Yeah, certainly, Your Honor. I'm not entirely sure where all these numbers come from. And is it that part of the problem that we don't have? We don't have a transcript, so we don't know what the court considered, either as to whether or not she was entitled to possession, whether or not the rent that was purported to be owed was proven to be owed. We don't know what one of the issues that she presented on our motion to vacate was this unequal negotiating positions, and we don't know what the trial court looked at or heard on those issues. Isn't that a problem for you as the upper line? I mean, I think in terms of what numbers were agreed to and where they come from in the agreed order. In the agreed order, yes. I think that that just sort of can sort of denote exactly how confused this was. But now you're challenging the judgment that was entered. Yes. I mean, I believe that the record is sufficient to – I mean, we do have my motion, we do have the orders, so I believe that we see enough to appeal the issue. What about that motion? What is that motion? The agreed order was entered, and it appears not to have been a final order because it allowed leave to reinstate. And then there was this motion to vacate that went well over the 30 days. So procedurally, how does this come before us? What happened is that Ms. Jones was not served with the motion to reinstate and for possession. So the first time she learned about it is when the sheriff showed up at her door, at which point she filed a motion, which is when I came on the case as well, and she filed a motion to vacate the previous order that she was not served with and also to challenge it on the merits, essentially. Did she file an appearance? She had filed an appearance at some point, I believe. I mean, she had appeared to actually enter the agreed order, but I'm not sure when exactly the appearance was officially filed. So was that motion a late post-trial motion or a 1401 petition? Which motion? Her motion to vacate. The motion to vacate. The order of possession that was entered. I mean, I think given the agreed order of possession, I'm not sure whether you can say that, Your Honor. I mean, she was not served with the motion for possession of the premises. Based on her record, didn't she contest service, filed her jury demand, then requested an opportunity to respond to the motion for possession, and then filed her motion to vacate procedurally? I believe that's correct, Your Honor. Okay. So going back to Justice Rochford's question, do we know what type of motion to vacate the motion was? Was it a 214-01, 213-01? I'm not sure, Your Honor. Okay. Can you discuss the jury waiver issue? The jury waiver issue is, I believe, something that really illustrates the breadth of Paragraph 4, because Paragraph 4 purports to waive the jury basically for all future controversies that may come between these two parties. And if that is the case, then it really shows exactly how problematic this Paragraph 4 is. And I think this goes to our argument on the invalidity of Paragraph 4. I have a question with regards to Paragraph 4. The fact that she appeared, doesn't that waive her right to a jury trial when she appeared in court to contest the possession issues? Well, that is somewhat up in the air, I believe, Your Honor, given the fact that in forceful entry and detainer cases there's, like, no answer filed. So when somebody appears is a little bit, you know, up in the air, whether they appeared for a limited purpose or for a non-limited purpose. In this case, Ms. Jones appeared to apparently just enter this agreed order. So whether she actually appeared before the judge in any other purpose beyond that, I do not believe so. But it was the time for her to appear when she came in and entered the agreed order, and she still hadn't filed a jury waiver. She did not file a jury waiver at that time. She was able to resolve the case through the agreed order. Yes. Yeah, if you want to reserve some time for rebuttal. Okay, I'll go ahead and do that. Okay. Thank you, counsel. Good morning, Justices. Good morning. My name is Marvin Hoosby, and I'm here on behalf of Hispanic Housing. With regard to this case, you know, I find it interesting that the defendant in this case argued public policy because I think the public policy here favors resolutions of these matters through settlement. And if you look at what the tenant was facing here, she was facing the loss of her subsidy because of a household member's felony aggravated. You brought the forcible because not for lack of payment. You brought it because there was this disturbance dealing with the other tenant, correct? An unlawful use of a weapon, correct. But then it turned into a rent issue. And I can explain it to the court. What happens is once a landlord is aware of a lease violation, if they proceed to accept rent at that point, they therefore waive that lease violation. So once a lease violation is known of, the landlord stops accepting rent at that point to proceed with the case. So once the case was resolved through the settlement agreement, there was outstanding rent due. And, of course, there was the court costs paid that my client sought reimbursement from. That was the purpose of the money portion of the agreement. So then doesn't this bring us closer to the use and occupancy order that I forget what case it is. It wasn't right to make a decision without the full scope of rights. There is a very large distinction between the circle management case and this case, Judge. In the circle management case, and Judge Garber has since passed away, what Judge Garber's practice was is he would award use and occupancy to the landlord in cases where there was a jury demand and things would take longer than normal. If the tenant violated that use and occupancy order, he would issue a sanction. And that sanction was possession of the premises. Those were orders issued by the court. In this case, we have an order agreed to by the parties, which I think is significantly different. And what the circle management case says is the judge can't unilaterally order possession without hearing an award possession. In this case, first of all, the judge is not acting unilaterally. The parties are agreeing, and they're agreeing to what the ramifications of a violation of this order would be by agreement. And they're settling and resolving the case. The case was dismissed at this point with leave to reinstate. In the use and occupancy orders, the case continues. The other significant distinction is that there was a hearing. I think it was inappropriate at that time to have a hearing because I think the motions were not properly filed. But Judge Murray in this case still went ahead and had a hearing if there was a violation of this order. And he determined there was a violation of the agreement via long history of this court  And so that is a significant difference than the court just issuing an order for use and occupancy, saying you violated it. Here the defendant agreed to make certain payments to resolve the case to continue her tenancy. And if you take it to its extreme, if these orders become unenforceable, any tenant can come into court, say, I'm going to make up the $2,000 I owe, I'm going to pay $500 a month. And then if they lose their job, the landlord would have to start over. And it wouldn't encourage asylum. But this is probably broader than most agreed orders, that it's going to cover this lease and any other lease and any other. I mean, that's rather broad. I think the broad language is a development of what we've seen throughout the process in doing evictions for 15 years. One of the things that's required in order for the landlord to receive their subsidy in these cases is to both recertify the tenant and enter into new leases with the tenant. So I think the reason for the future leases is, and I'll pause this. I don't know when Ms. Jones' recertification would have come up in this case, but it's at least annual. So that if they recertified her and entered into a new lease with her, let's say in December, it could be viewed as a waiver of this agreement. And so the reason for that broad language is to avoid wavering. You know, the general idea of this agreement was that there is a, and was handwritten in 1.1 for that purpose, was that there was going to be a year probation. And that Mr. Morton would come off the lease, he would be barred. He was already off the lease at that time. She had removed him prior to, or had arranged to have him removed prior to court. So was he dismissed out of the action? I think procedurally he was not dismissed out of the action. But he was no longer residing there, so. But he had been named. He had been named. But the action, but the agreed order dismissed the action with leave to reinstate. So the action in total was dismissed. But that thought was with leave to reinstate. So that order was not a final and appealable order, I would think. And then you came in on the motion to vacate, and the case was reinstated. So there was a dismissal at that stage. There was not a dismissal of any kind. And then you had a judgment. But the judgment would only have encompassed Ms. Jones. Correct. And the sheriff, but it included all unknown occupants. So in terms of the sheriff executing the writ, there wouldn't have been a problem for the sheriff to execute the writ. Mr. Morton was no longer residing. What about our appellate jurisdiction? Well, I think that the court made a final ruling as to this case when it awarded possession to my client and the judgment for the remaining balance due. Are these considered, these are both in rem, in person? The judgment in this case, I apologize, Your Honor. The judgment in this case I would not consider in rem, and maybe I'm misspeaking. I hadn't really made that part of the briefs. But the order of possession was awarded property to us to the extent that that's in rem and against Ms. Jones. Then you had a judgment against Ms. Jones. And then we had a judgment. So the motion was granted for the possession, but then the judge allowed Ms. Jones an opportunity to respond to the motion for possession. Yes, Judge. And what happens is once the order of possession was entered, we placed it with the sheriff. At that time it took the sheriff three months approximately to come out to execute the writ. The sheriff does procedurally send mailings to the tenant to let them know that, and those mailings say, we can come any day. Once the writ was executed, that's when Ms. Jones came in and filed her motion, and that's when she obtained counsel. The court at that time said, because it was rather immediate, her property was still present in the unit, the court said I'm going to maintain the status quo and I'm going to let them respond to the motion. We objected to that because we didn't feel the motion was relevant. In a timeline, you were granted possession in January? Correct, Judge. And then Ms. Jones came in with counsel in April? I believe the writ was executed on March 20th. Okay, but with regards to responding to the motion for possession? I can check that order, Judge, but it was shortly thereafter, and, in fact, Ms. Jones filed a motion pro se on March 19th, so shortly after the writ was executed, and then on March 20th, that's when Judge Murray gave them time to respond to the motion. To respond, all right. So it was an emergency motion by Ms. Jones once she was displaced. So was it a 1401 motion? I think it would have had to be brought as that type of motion. It was not. It was not specified. It was argued in our briefs that the motion was not timely. It did not comport with the statute. It did not offer an argument as to a defense, a meritorious defense, and I believe it did not contain an affidavit. Okay. So we do believe that's true. And are the issues moved? I think the issues are moved at this point. The sheriff has executed the writ. The apartment's been re-rented for some time. I mean, they're re-rented almost immediately. And so it's been over a year since the unit has been re-rented. And putting that issue aside, what about the other issue with regards to the alleged Scrivener's error? You know, I wish I could explain to the court why that line is there. For the same reason that I said to Judge Murray when it was raised at the I don't know if it's from a copier. I don't think it's from a copier because it has a period, but I don't know if it's, you know, again, a Scrivener's error. Judge Murray did rule on that issue, and he determined that that was actually not there for initials. I don't know if it's there for initials. I don't think it, even if it was there for initials, I don't think it matters that it was an initial. This is a one-page document that was signed by the defendant. Judge Murray stated that it is his practice, although he couldn't remember, you know, specific cases, but every time he enters an agreed order, and these are frequent orders entered by the court to resolve and keep tenants in place, to not displace and make tenants homeless, to try and keep them in their units. He determined that it was not a Scrivener's error. All right. So we weren't provided a transcript of the proceedings, but we also weren't provided a bystander's report. Do you know why? I don't, Judge, and I wish I had at this point, or counsel had, I can see how that would. Or an agreed statement of the facts. I think that would have significantly helped the court, but I think Mr. Malmes, if he came back up, would say that Judge Murray did rule on the issue of that line not being a spot for initials. Anything else? I would just, I just think that, you know, public policy dictates that. To give people second chances, to allow them to remain in their unit, is good public policy, and the current law would require extraordinary circumstances, fraudulent misrepresentation, coercion, incompetence, gross disparity of targeting positions, or newly discovered evidence, is sound law required to overturn any agreed orders. Thank you. Thank you, Justices. Mr. Malmes, you have a couple minutes for rebuttal, please. Just quickly, Your Honors, on the circle management case, counsel made two points which I want to address. He had noted that in this case that there was an agreement of the parties as to the order. That was also, however, the case in the circle management case, there was an agreed order as to the use and occupancy order. Additionally, the circle management case, you know, this was, like that case, this was an order entered as the case continued. You know, it was not a final disposition of the case, or even a final settlement of the case, simply because of the paragraph 4 holding this thing open for, you know, time immemorial. And for those reasons, I think it's much closer to the circle management case. If there are no further questions, then Appellant Shante Jones respectfully requests that this court reverse the decision of the trial court and remand for further proceedings. Thank you very much. We will take the matter under advisement. Court is adjourned.